**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LORENZO ALVAREZ-CERRITENO,
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, United
States Attorney General,
*Respondent.*

No. 16-73486

Agency No.
091-009-097

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 14, 2018
San Francisco, California

Filed August 8, 2018

Before: Marsha S. Berzon and Carlos T. Bea, Circuit
Judges, and Terrence Berg,* District Judge.

Opinion by Judge Bea;
Concurrence by Judge Berzon

---

*The Honorable Terrence Berg, District Judge for the Eastern
District of Michigan, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted a petition for review of the Board of Immigration Appeals' determination that Lorenzo Alvarez-Cerriteno was removable, holding that the BIA erred in finding that his conviction for "Child Abuse and Neglect" under Nevada Revised Statutes § 200.508(2)(b)(1) was categorically a "crime of child abuse" under 8 U.S.C. § 1227(a)(2)(E)(i), and remanded.

The panel observed that it was bound by this court's recent opinion in *Martinez-Cedillo v. Sessions*, No. 14-71742, 2018 WL 3520402 (9th Cir. July 23, 2018), which deferred to the BIA's interpretation, in *Matter of Soram*, 25 I. & N. Dec. 378 (BIA 2010), that the generic crime of child abuse includes acts and omissions that create at least a "reasonable probability" that a child will be harmed.

The panel further concluded that, to sustain a conviction under section 200.508(2), the Supreme Court of Nevada would require proof that a defendant negligently exposed a child to at least a "reasonably foreseeable" harm, but no greater risk need be shown.

Comparing the federal generic crime and Nevada statute of conviction, the panel concluded that the Nevada statute is broader because it includes conduct that creates a "reasonable foreseeability" of harm to a child, while the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

generic crime requires a "reasonable probability" of harm. The panel also concluded that there is a "realistic probability" that Nevada could prosecute conduct under its statute that falls outside the scope of the federal generic crime.

Concurring, Judge Berzon wrote that if the panel were not bound by *Martinez-Cedillo*, she would rule in accord with Judge Wardlaw's dissent in that case because *Matter of Soram* is not a reasonable interpretation of the phrase "crime of child abuse."

## COUNSEL

Don P. Chairez (argued), Law Offices of Don Chairez, Woodland, California, for Petitioner.

Erica B. Miles (argued) and Anthony W. Norwood, Senior Litigation Counsel; Corey L. Ferrell, Attorney; Chad A. Readler, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

BEA, Circuit Judge:

Today we must determine whether Nevada's child neglect statute is broader—that is, makes criminal more conduct—than does the federal Immigration and Nationality Act's ("INA") generic "crime of child abuse." If so, the Board of Immigration Appeals ("BIA") erred in finding Petitioner, a native and citizen of Mexico and a legal permanent resident of the United States, removable as charged under the INA. Because the Nevada statute outlaws conduct that presents a lesser risk of harm to a child ("reasonably foreseeable" harm) than does the conduct required to violate the INA (at least a "reasonable probability" of harm), we conclude that the BIA did so err, and grant the petition.

## I.  BACKGROUND

### A.  Factual History

Petitioner Lorenzo Alvarez-Cerriteno ("Alvarez-Cerriteno") is a native and citizen of Mexico. He entered the United States on March 9, 1985, without inspection or parole. However, he duly became a lawful permanent resident on December 1, 1990.

Alvarez-Cerriteno has incurred several criminal convictions since entering the United States, including a January 18, 2011, conviction for "Child Abuse and Neglect" under Nevada Revised Statutes § 200.508(2)(b)(1).[1] In that

---

[1] "2. A person who is responsible for the safety or welfare of a child . . . and who permits or allows that child . . . to be placed in a situation where the child may suffer physical pain or mental suffering as the result

case, Alvarez-Cerriteno was charged with "punching" his fourteen-year-old son in 2010.**2**  Alvarez-Cerriteno pleaded guilty to violating § 200.508(2)(b)(1) and received a prison sentence of nine months.  After Alvarez-Cerriteno was arrested because of outstanding traffic warrants in 2016, the Department of Homeland Security ("DHS") initiated removal proceedings against him based on the 2011 child abuse conviction.

## B.  Procedural History

DHS issued a Notice to Appear ("NTA") and charged that Alvarez-Cerriteno was removable pursuant to Section 237(a)(2)(E)(i) of the   INA (codified at 8 U.S.C. § 1227(a)(2)(E)(i)) as an "alien who at any time after entry has been convicted of . . . a crime of child abuse, child neglect, or child abandonment."  Alvarez-Cerriteno admitted the factual allegations in the NTA but denied the charge of removability.  On May 31, 2016, he submitted an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(a).

On June 6, 2016, the Immigration Judge (IJ) issued a written decision, which (1) found that Alvarez-Cerriteno was removable as charged in the NTA and (2) denied Alvarez-Cerriteno's application for discretionary cancellation of removal.  On the first issue, the IJ found that, under the

---

of abuse or neglect: . . . (b) If substantial bodily or mental harm does not result to the child: (1) If the person has not previously been convicted of a violation of this section or of a violation of the law of any other jurisdiction that prohibits the same or similar conduct, is guilty of a gross misdemeanor."  Nev. Rev. Stat. § 200.508(2).

**2** During his hearing before the immigration judge, Petitioner stated that he hit his son in the face during an argument.

BIA's decision in *Matter of Soram*, "the crime of unreasonably placing a child in a situation that poses a threat of injury to the child's life or health . . . is categorically a crime of child abuse under [the INA], even though no proof of actual harm or injury to the child was required" under the state statute of conviction. *Matter of Soram*, 25 I. & N. Dec. 378 (BIA 2010). Having thus denied Alvarez-Cerriteno's claim based on the "categorical approach,"[3] the IJ did not apply the "modified categorical approach." On the second issue, the IJ denied discretionary relief based on Alvarez-Cerriteno's "pattern of violations of this country's criminal laws."

On October 25, 2016, the BIA dismissed Alvarez-Cerriteno's appeal. The Board affirmed the IJ's determination that Alvarez-Cerriteno was removable based on a conviction for a "crime of child abuse, neglect, or child abandonment." 8 U.S.C. § 1227(a)(2)(E)(i). The BIA found that the Nevada statute includes reasonableness and criminal-negligence standards that would "preclude a

---

[3] In *Taylor v. United States*, the Supreme Court prescribed a "categorical approach" for determining whether a given state conviction constitutes a conviction of a "generic" type specified in a federal sentencing statute. 495 U.S. 575, 602 (1990). In its unmodified form, that approach requires courts to determine whether "the basic elements" of the state statute of conviction are the same (or narrower) than the elements of the federal generic crime, without considering any facts of the defendant's crime beyond "the mere fact of conviction." *Id.* at 598–602. The so-called "modified categorical approach," however, permits courts "to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the generic crime]." *Id.* at 602. That is, "if the indictment or information and jury instructions" in the state case "show that . . . the jury *necessarily* had to find" the elements of the generic crime, then the state conviction constitutes a conviction of the federal generic crime and counts for the purpose of the federal statute. *Id.* at 602 (emphasis added).

conviction" for conduct which "creates only the bare potential for nonserious harm to a child." The BIA concluded therefore that there was no "realistic probability" the Nevada statute could be used to prosecute conduct outside the scope of the generic crime in the INA. The BIA also affirmed the IJ's discretionary denial of cancellation of removal on de novo review, and emphasized that Alvarez-Cerriteno's "history of domestic violence over a period of years, for which he shows little remorse, is a very significant negative factor." Petitioner timely petitioned this court for review.

## II. STANDARD OF REVIEW

"Where, as here, the BIA adopts the IJ's decision and adds some of its own analysis, the panel reviews both decisions." *Ling Huang v. Holder*, 744 F.3d 1149, 1152 (9th Cir. 2014). This court reviews de novo "the BIA's conclusions on questions of law—including whether a particular state conviction is a removable offense under the INA—except to the extent that deference is owed to the BIA's interpretation of the statutes and regulations it is charged with administering," including the INA. *Fregozo v. Holder*, 576 F.3d 1030, 1034 (9th Cir. 2009). "The BIA's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Ling Huang*, 744 F.3d at 1152 (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III.   DISCUSSION

### A.  Legal Framework

The INA, as codified and amended, provides that "[a]ny alien who at any time after admission is convicted of . . . a crime of child abuse, child neglect, or child abandonment is

deportable."   8 U.S.C. § 1227(a)(2)(E)(i).   Where, as here, the immigration statute refers to a generic crime ("a crime of child abuse"), the BIA must apply the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether the state conviction was for conduct that falls within the scope of the generic crime.   *See Fregozo*, 576 F.3d at 1035.   Under the categorical approach, the BIA "'compare[s] the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the state statute is broader than the generic federal definition.'"   *Id.*   "'If the statute of conviction criminalizes conduct that would not satisfy the federal definition of the crime at issue, then the conviction does not qualify as a predicate offense under the categorical approach."   *Id.* (citations omitted).

Thus, the BIA must construe both the state and federal statutes.   *Id.* at 1034–35 ("To determine whether a state conviction constitutes a removable offense, the BIA must determine first the elements of the offense the petitioner has been convicted of committing, and second whether the conviction falls within the definition of a removable offense under the INA.").   "As the BIA has no statutory expertise in . . . state law matters," this court "reviews de novo its determination of the elements of the offense for which the petitioner was convicted."   *Id.* at 1034.   However, "[i]f, in resolving the [federal law] issue, the BIA has interpreted an ambiguous INA statutory term"—here, "a crime of child abuse, child neglect, or child abandonment"—"and rendered its interpretation in a precedential decision intended to carry the force of law," this court defers to the BIA's interpretation under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).   *Id.* at 1034–35.

We proceed in three steps. First, we determine the elements of the federal generic crime. *See* Section III.B, *infra*. Second, we analyze Nevada Revised Statute § 200.508 to determine the elements of the Nevada statute of conviction. *See* Section III.C, *infra*. Finally, we compare the federal generic crime and the Nevada statute of conviction and conclude that (1) the Nevada statute's elements encompass more conduct than do the federal generic crime's elements and (2) there is a "realistic probability" that Nevada could prosecute conduct under its statute that falls outside the scope of the federal generic crime, as required by *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). *See* Section III.D, *infra*. Therefore, the BIA erred in finding that Petitioner's conviction was categorically a crime of child abuse under the INA.

## B.  Scope of the Federal Generic Crime

### 1.  The BIA's Construction

In *Fregozo v. Holder*, this court considered whether a petitioner's conviction under a California child abuse statute, which made criminal "willfully caus[ing] or permit[ting] . . . [a] child to be placed in a situation where his or her person or health *may be* endangered," was categorically a "crime of child abuse" under the INA. Cal. Penal Code § 273a(b) (emphasis added)); *Fregozo,* 576 F.3d at 1037. The panel noted that "[t]he term 'crime of child abuse' is not defined in the INA," and that this court "ha[d] not defined the term as it is used in that statute." *Fregozo*, 576 F.3d at 1035. The panel did not construe the generic crime, but rather deferred to the BIA's construction in *Matter of Velazquez-Herrera,* 24 I. & N. Dec. 503 (BIA 2008). There, the BIA had construed the federal generic "crime of child abuse" to mean "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes

maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Id.* at 512. Using that definition, *Fregozo* found that the generic "crime of child abuse" did not include conduct that "creates only *potential* harm to a child." 576 F.3d at 1037–38 (emphasis added). The panel therefore held that the California statute was broader than the federal generic crime. *Id.* The court granted the petition and remanded to the BIA. *Id.* at 1040.

Alvarez-Cerriteno argues that *Fregozo* requires the same result here: Because the Nevada statute of conviction criminalizes acts which place a child in a situation where he "*may* suffer physical pain or mental suffering," it too criminalizes more conduct than does the federal generic crime. Thus, a conviction under the Nevada statute is not categorically a "crime of child abuse" under the INA. However, after this court decided *Fregozo*, the BIA clarified that its definition of the federal generic "crime of child abuse," as set forth in *Velazquez-Herrera*, was "not limited to offenses requiring proof of injury to the child." *Matter of Soram*, 25 I. & N. Dec. 378, 381 (BIA 2010). In *Matter of Soram*, the BIA clarified that the federal generic "crime of child abuse" is broad enough to include criminally negligent acts and omissions that create at least a "reasonable probability" of harm to a child. *Id.* at 385–86. The BIA based this conclusion on a survey of child abuse, "neglect," "abandonment," and "endangerment" laws in American state and territorial jurisdictions. *Id.* at 382–83. The BIA found that "[a]s recently as July 2009, some 38 States, . . . included in their civil definition of 'child abuse,' or 'child abuse or neglect,' acts or circumstances that threaten a child with harm or create a substantial risk of harm to a child's

health or welfare."**[4]**  *Id.* at 382.  Therefore, it concluded, a majority of jurisdictions agreed that a "crime of child abuse" could include acts which did not result in actual harm. *Id.*

The BIA did not purport to decide definitively what "degree of threat" of harm to the child the generic crime required, but instead left that question for later cases:

> [A]pproximately half of the States that include endangerment-type offenses in their definitions of "child abuse" . . . do not specify the degree of threat required.  . . . [W]e will not attempt to analyze whether the myriad State formulations of endangerment-type child abuse offenses come within the ambit of "child abuse" under [the INA]. Rather, we find that a State-by-State analysis is appropriate to determine whether the risk of harm required by the endangerment-type language in any given State statute is sufficient to bring an offense within the definition of "child abuse" under the Act.

*Id.* at 382–83.   However, turning to its "State-by-State analysis," the BIA determined in *Soram* that the Colorado

---

**[4]** In *Soram*, the majority BIA opinion argued that it properly considered state *civil* codes in defining the generic "crime of child abuse," despite the fact that civil codes do not define crimes at all.  25 I. & N. Dec. at 382 n.3 (noting that, in *Fregozo*, this court deferred to the BIA's interpretation in *Velazquez-Herrera*, which likewise considered civil definitions).  The concurring opinion in *Soram* instead focused on state criminal statutes, but reached the same conclusion as the majority because "as of September 1996, a majority of States—28—had criminal provisions punishing child endangerment offenses as part of their criminal child abuse statutes."  *Id.* at 386–88.

statute at issue there (as interpreted by the courts of Colorado) required at least a "reasonable probability" of harm to the child, and that the generic crime did not require more. *Id.* at 384–86. Thus a violation of the Colorado statute constituted commission of the generic crime of child abuse under the INA. *Id.* The BIA has since stated that a "likelihood" of harm to the child is also sufficient to bring an act or omission within the scope of the generic crime. *Matter of Mendoza Osorio*, 26 I. & N. Dec. 703, 706 (BIA 2016) ("[A]cts creating a likelihood of harm to a child . . . fit within our definition of a 'crime of child abuse, child neglect, or child abandonment.'").

### 2. *Chevron* **deference**

Ordinarily, this court must apply the *Chevron* two-step analysis to determine whether to defer to the BIA's construction of the generic term "crime of child abuse" in 8 U.S.C. § 1227(a)(2)(E)(i). That two-step inquiry asks if (1) the INA is ambiguous with regard to what constitutes a "crime of child abuse" and (2) the BIA's construction in *Soram* reasonably resolves the ambiguity. However, this court recently held that the BIA's interpretation of the generic crime in *Soram* is entitled to *Chevron* deference. *Martinez-Cedillo v. Sessions*, No. 14-71742, 2018 WL 3520402, at *11 (9th Cir. July 23, 2018) (holding that "the BIA's interpretation of a crime of child abuse, neglect, or abandonment in *Velazquez* and *Soram* is a reasonable construction of ambiguous statutory language"). We are bound by this precedent. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). Therefore, we defer to the BIA's definition of "crime of child abuse" in *Soram*. Accordingly, the generic "crime of child abuse," as used in the INA, includes acts and omissions that (1) are criminally negligent and (2) create at least a "reasonable probability"

that a child will be harmed. *Soram*, 25 I. & N. Dec. at 385–86.

## C.  Scope of the Nevada "Statute of Conviction"

We next consider the elements of the Nevada Revised Statute § 200.508(2), the "statute of conviction."  "As the BIA has no statutory expertise in . . . state law matters," this court "reviews de novo its determination of the elements of the offense for which the petitioner was convicted." *Fregozo*, 576 F.3d at 1034.  Although densely worded, section 200.508 defines as a misdemeanor (1) an act or omission (2) by a person "responsible for the safety or welfare of a child" (3) who has no prior child abuse convictions, (4) which act or omission "permits or allows" (5) the child "to be placed in a situation where the child may suffer physical pain or mental suffering" (6) as a result of the responsible person's "abuse or neglect," (7) even if "substantial bodily or mental harm does not result to the child." Nev. Rev. Stat. § 200.508(2).**[5]**

Like the generic crime, section 200.508(2) requires a *mens rea* of at least negligence.  The Nevada statute defines "allows" as "to do nothing to prevent or stop the abuse or neglect of a child in circumstances where the person *knows or has reason to know* that the child is abused or neglected."

---

**[5]** The statutory text reads, in pertinent part:  "2. A person who is responsible for the safety or welfare of a child . . . and who permits or allows that child . . . to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect: . . . (b) If substantial bodily or mental harm does not result to the child: (1) If the person has not previously been convicted of a violation of this section or of a violation of the law of any other jurisdiction that prohibits the same or similar conduct, is guilty of a gross misdemeanor."  Nev. Rev. Stat. § 200.508(2).

*Id.* § 200.508(4)(b) (emphasis added).   "'Permit' means permission that a *reasonable person* would not grant and which amounts to a neglect of responsibility attending the care, custody and control of a minor child."   *Id.* at § 200.508(4)(c) (emphases added).   Thus, the statute requires a *mens rea* of either knowledge or negligence. Because negligence is the lower of the two standards, it is the relevant *mens rea* element for purposes of the categorical approach.

However, section 200.508(2) does not specify what probability of harm to the child the "situation" in which the child is placed must carry; it merely refers to situations "where the child *may* suffer physical pain or mental suffering" as a result of "abuse or neglect."  Nev. Rev. Stat. § 200.508(2) (emphasis added).   Nevada courts have not decided what "may" means precisely in this provision, but other state courts have interpreted similarly worded provisions to carry either a "reasonable foreseeability" standard, *see, e.g.*, *People v. Hansen*, 68 Cal. Rptr. 2d 897, 900 (Ct. App. 1997) (holding that California Penal Code § 273a[6] "condemned . . . permitting [a child] to be placed[] in a situation in which serious physical danger or health hazard to the child is reasonably foreseeable"), or a "reasonable probability" standard, *People v. Hoehl*, 568 P.2d 484, 486 (Colo. 1977) ("We construe the word 'may' . . . to mean that there is a reasonable probability that the child's

---

[6] The California statute provides, "Any person who . . . willfully . . . permits [a] child to be placed in a situation where his or her person or health *may* be endangered, is guilty of a misdemeanor."  Cal. Penal Code § 273a(b) (emphasis added).

life or health will be endangered from the situation in which the child is placed.").**[7]**

We think the Supreme Court of Nevada would likely adopt California's "reasonable foreseeability" standard. First, "may" denotes mere possibility; it does not require any particular threshold of likelihood or probability. *See, e.g.*, *May*, *Black's Law Dictionary* (10th ed. 2014) ("To be a possibility . . . .").

Second, the reasonableness and negligence standards set forth in the definition of "permit" suggest a "reasonable foreseeability" standard. *Smith v. State*, 927 P.2d 14, 18 (Nev. 1996), *abrogated on other grounds by City of Las Vegas v. Eighth Judicial Dist. Court ex rel. County of Clark*, 59 P.3d 477 (Nev. 2002) (holding that the definition of "permit" in § 200.508(4)(c) "indicates that a violator must act in a way that 'a reasonable person' would not.").**[8]** The use of a "reasonable person" standard suggests a common-law-negligence standard of culpable causation, which requires only reasonable foreseeability. *See Butler ex rel.*

---

**[7]** The Supreme Court of Colorado did not make clear what it meant, exactly, by "reasonable probability." It stated only that it is something less than "imminent danger." 568 P.2d at 560.

**[8]** In *Smith v. State*, the Supreme Court of Nevada rejected the defendant's argument that the phrase "placed in a situation where the child may suffer" was impermissibly vague. *Smith*, 927 P.2d at 18. The defendant had allowed her son to be severely physically abused by her boyfriend. *Id.* at 15. The state proved that the defendant saw bruises on her son's body, was told of the beatings by her boyfriend, and several times refused to take her son to the hospital." *Id.* at 19. The court held that the statute was not void for vagueness as applied to the defendant because she was on notice that she "act[ed] unreasonably," for purposes of the statute, in permitting or allowing her son to be subjected to her boyfriend's abuse. *Id.* at 18.

*Biller v. Bayer*, 168 P.3d 1055, 1065 (Nev. 2007) (listing proof of "harm to the plaintiff that was reasonably foreseeable" among necessary elements of a negligence claim under Nevada law); *see also Early v. N.L.V. Casino Corp.*, 678 P.2d 683, 684 (Nev. 1984) ("[T]he proprietor's duty to protect an invited guest from injury caused by a third person is circumscribed by the *reasonable foreseeability* of [1] the third person's actions and [2] the injuries resulting from the condition or circumstances which facilitated the harm." (emphasis added)).

Third, the Supreme Court of Nevada has noted that § 200.508 is "very similar" to the California child abuse statute at issue in *Fregozo*, Cal. Penal. Code. § 273a. *Smith*, 927 P.2d at 19 n.2. This analogy further suggests that the Supreme Court of Nevada would interpret section 200.508(2) to carry the same "reasonable foreseeability" standard as the California statute. *See, e.g.*, *Hansen*, 68 Cal. Rptr. 2d at 900; *People v. Beaugez*, 43 Cal. Rptr. 28, 33–34 (Ct. App. 1965) (construing Cal. Penal Code § 273a's "may be endangered" language "to condemn the intentional placing of a child, or permitting him to be placed, in a situation in which serious physical danger or health hazard to the child is reasonably foreseeable").

The government argues that the Nevada statute is "meaningfully distinguishable and different from the California statute" because it requires proof of an additional element of "abuse or neglect." This element may be proved, asserts the government, by showing that "a person responsible for the child must have [1] allowed or permitted abuse or neglect, *and* [2] placed that child at risk of even more harm amounting to 'physical pain or mental suffering.'" But even if the court reads the statute to require proof of actual "abuse or neglect" in all cases, that

requirement may be satisfied by proof of "*negligent* treatment . . . under circumstances which indicate that the child's health or welfare is harmed or *threatened with harm*." Nev. Rev. Stat. § 200.508(4)(a) (defining "abuse or neglect") (emphasis added). So , even accepting the government's argument, we are still left to ask what "threat" of harm, as "indicate[d]" in the "circumstances," is required for a finding of "abuse or neglect" (and thus guilt). As discussed above, determining whether treatment is "negligent" involves the application of an objective, "reasonable person" standard. Thus, treatment of a child is negligent when it places the child in circumstances that create a risk of harm which is "reasonably foreseeable." Accordingly, we find that, to sustain a conviction under section 200.508(2), the Supreme Court of Nevada would require proof that a defendant negligently exposed a child to at least a "reasonably foreseeable" harm, but no greater risk need be shown.

## D.  Comparison

As discussed in the preceding sections, the generic crime includes conduct that creates at least a "reasonable probability" or a likelihood of harm to a child. But the Nevada statute is even broader:  It includes conduct that creates only a "reasonable foreseeability" of harm to a child. *Compare Probability*, *Black's Law Dictionary* (10th ed. 2014) ("1. Something that is likely . . . 2. The degree to which something is likely to occur . . . 3. The quality, state, or condition of being more likely to happen or to have happened than not . . . ."), *and Reasonable Medical Probability*, *id.* ("In proving the cause of an injury, a standard requiring a showing that the injury was *more likely than not* caused by a particular stimulus . . . ." (emphasis

added)), *with Foreseeability*, *id.* ("The quality of being reasonably anticipatable.").

The BIA seems to agree.  In *Matter of Mendoza Osorio*, the BIA specifically cited the California child abuse statute as an example of a "child endangerment statute[] that do[es] not require a sufficiently high risk of harm to a child to meet the definition of child abuse, neglect, or abandonment under the [INA]."  26 I. & N. Dec. 703, 711 (BIA 2016).  Because we find that the Supreme Court of Nevada would interpret section 200.508(2) to carry the same "reasonable foreseeability" standard as California Penal Code § 273a, the Nevada provision likewise "do[es] not require a sufficiently high risk of harm to a child to meet the definition of child abuse, neglect, or abandonment" adopted in *Soram*.  The BIA therefore erred in distinguishing Nevada Revised Statute § 200.508(2) from California Penal Code § 273a(b).

Finally, "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute . . . requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."  *Duenas-Alvarez*, 549 U.S. at 193.  According to the government, the Nevada statute raises no "realistic probability of prosecution for acts which encompass the nonserious harm contemplated in *Fregozo*."  However, the Supreme Court of Nevada has held that "a rational juror could reasonably infer . . . child neglect" sufficient to support a conviction under § 200.508(2) from evidence that the child "missed at least 47 days of school" during one semester.  *See Gibson v. State*, No. 57193, 2011 WL 2793542, at *1 (Nev. June 15, 2011).  There, the court noted that the defendant, the child's father, was home with the child on those days, and that the child "often" stayed home to take care of the defendant or to help

around the house. *Id.* The court affirmed the judgment of conviction even though there was a less than reasonable probability that a child would suffer "physical pain or mental suffering" as a result of staying home with her father. *Id.* at *4. Therefore, there is a "realistic probability" that Nevada's statute could be used to prosecute conduct that poses less than a "reasonable probability" of actual harm to a child. *See Fregozo*, 576 F.3d at 1037 (finding a "realistic probability" of prosecution for conduct outside the scope of the generic crime based on a single case where the California child abuse statute was "used to prosecute a parent who placed 'an unattended infant in the middle of a tall bed without a railing, even though the child was never injured'") (citing *People v. Little*, 9 Cal. Rptr. 3d 446, 449–50 (Ct. App. 2004)).

## IV.    CONCLUSION

"In reviewing the decision of the BIA," this court considers "only the grounds relied upon by that agency." *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004). Neither the IJ, nor the BIA, nor the government's answering brief cites any case or BIA decision which interprets the federal generic "crime of child abuse" to include conduct which creates only a "reasonably foreseeable" risk of harm to a child.[9] Nor did the BIA purport below to expand upon *Soram*'s construction of the generic crime to include conduct that creates only a "reasonably foreseeable" risk of harm to a child. Rather, the BIA based its decision on its erroneous

---

[9] The BIA has itself suggested that the generic crime is not so capacious. *See Matter of Mendoza Osorio* 26 I. & N. Dec. 703, 711 (BIA 2016) (noting that California Penal Code § 273a(b) "do[es] not require a sufficiently high risk of harm to a child to meet the definition of child abuse, neglect, or abandonment under the [INA]").

interpretation of the Nevada statute. If "the BIA's decision cannot be sustained upon its reasoning," then this court "must remand to allow the agency to decide any issues remaining in the case." *Andia*, 359 F.3d at 1184. We therefore grant the petition and remand for further proceedings.[10]

Finally, we lack jurisdiction to consider Petitioner's challenge to the denial of discretionary cancellation of removal. Petitioner does not argue that the IJ applied the wrong law, or that the IJ failed to consider any relevant facts. Petitioner argues only that the IJ incorrectly weighed the relevant factors in denying cancellation of removal as a matter of discretion. But "we lack jurisdiction to review the merits of a discretionary decision to deny cancellation of removal." *Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012).

**PETITION GRANTED and REMANDED.**

BERZON, Circuit Judge, concurring:

I concur in the opinion. As the majority notes, we are bound by this court's decision in *Martinez-Cedillo v. Sessions*, No. 14-71742, 2018 WL 3520402 (9th Cir. July 23, 2018). Were we not so bound, I would rule in accord with Judge Wardlaw's dissent in that case. I agree with Judge Wardlaw that *Matter of Soram*, 25 I. & N. Dec. 378 (B.I.A.

---

[10] On remand, the BIA may consider whether to deny relief because Petitioner's conviction falls within the generic "crime of child abuse" under the "modified" categorical approach. *See Fregozo*, 576 F.3d at 1039 (granting petition and remanding for the BIA to apply the modified categorical analysis).

2010), is not a reasonable interpretation of the phrase "crime of child abuse" under 8 U.S.C. § 1227(a)(2)(E)(i). *See Martinez-Cedillo*, 2018 WL 3520402, at \*22 (Wardlaw, J., dissenting). Because I am bound by *Martinez-Cedillo*, however, I concur.