**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAFAEL DIAZ-RODRIGUEZ, *Petitioner*, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, *Respondent*. | No. 13-73719 <br><br> Agency No. A093-193-920 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 13, 2021
Pasadena, California

Filed September 10, 2021

Before:  Consuelo M. Callahan and Paul J. Watford, Circuit
Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Watford;
Dissent by Judge Callahan

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

Granting Rafael Diaz-Rodriguez's petition for review of a decision of the Board of Immigration Appeals, the panel held that child endangerment, in violation of California Penal Code § 273a(a), does not constitute "a crime of child abuse, child neglect, or child abandonment" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i).

In *Martinez-Cedillo v. Sessions*, 896 F.3d 979 (9th Cir. 2018), a divided panel held to the contrary, and a majority of the non-recused active judges voted to rehear the case en banc. However, after the petitioner passed away, the en banc court dismissed the appeal as moot and vacated the panel decision. The panel here observed that *Martinez-Cedillo* is no longer binding precedent, but explained that between its issuance and the decision to rehear the case en banc, two published opinions relied on it: *Menendez v. Whitaker*, 908 F.3d 467 (9th Cir. 2018), and *Alvarez-Cerriteno v. Sessions*, 899 F.3d 774 (9th Cir. 2018).

The panel concluded that the unusual circumstance here led it to conclude that this case falls outside the scope of the general rule that three-judge panels are bound to follow published decisions of prior panels. The panel explained that both *Alvarez-Cerriteno* and *Menendez* simply followed *Martinez-Cedillo* as then-binding precedent without engaging in independent analysis of the deference issue, and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

both decisions were effectively insulated from en banc review on that issue. The panel explained that both decisions are irreconcilable with a subsequent decision of the court sitting en banc because their reliance on *Martinez-Cedillo* is in conflict with the en banc court's decision to designate that decision as non-precedential.

Applying the categorical approach, the panel identified the elements of California Penal Code § 273a(a): causing or permitting a child "to be placed in a situation where his or her person or health is endangered," committed with a *mens rea* of criminal negligence. As to the federal offense, the panel explained that Congress enacted the ground of removability at 8 U.S.C. § 1227(a)(2)(E)(i) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and did not define the phrase "a crime of child abuse, child neglect, or child abandonment." In *Matter of Soram*, 25 I. & N. Dec. 378 (BIA 2010), however, the BIA held that the phrase encompassed child endangerment offenses committed with a *mens rea* of at least criminal negligence. In considering whether *Soram* was entitled to deference, the panel was guided by the Supreme Court's decision in *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017), where the Court observed that the term "sexual abuse of a minor" was undefined and then looked to normal tools of statutory interpretation in concluding that the statute unambiguously forecloses the BIA's interpretation of it.

Applying this approach, the panel concluded that deference was precluded at *Chevron* step one because the text of § 1227(a)(2)(E)(i) unambiguously forecloses the BIA's interpretation as encompassing negligent child endangerment offenses. First, the panel explained that contemporary legal dictionaries from the time of IIRIRA's enactment indicate that child abuse, child neglect, and child

abandonment were well-understood concepts with distinct meanings that do not encompass one-time negligent child endangerment offenses. Second, the panel explained that the statutory structure suggested that Congress deliberately omitted child endangerment from the list of offenses specified in § 1227(a)(2)(E)(i). Third, the panel explained that the general consensus drawn from state criminal codes confirms that the phrase does not encompass negligent child endangerment offenses. The panel noted that the fourth source consulted in *Esquivel-Quintana*, related federal criminal statutes, did not aid its analysis.

Because a violation of California Penal Code § 273a(a) can be committed with a *mens rea* of criminal negligence, the panel concluded that it is not a categorical match for "a crime of child abuse, child neglect, or child abandonment." Accordingly, the panel concluded that Diaz-Rodriguez's conviction under that statute did not render him removable under § 1227(a)(2)(E)(i).

Dissenting, Judge Callahan wrote that she was compelled to dissent for two reasons. First, she did not agree that the three-judge panel could disregard *Menendez* and *Alvarez-Cerriteno*. Second, Judge Callahan did not agree with the majority's peculiar reading of the phrase as not encompassing a child endangerment offense committed with a *mens rea* of at least criminal negligence. Judge Callahan wrote that majority's suggestion that § 1227(a)(2)(E)(i) is unambiguous is contrary to precedent and the unanimous opinions of the court's sister circuits. Moreover, she wrote that the majority failed to recognize that the court's task is limited to reviewing the agency's interpretation for "reasonableness." Instead, the majority proffered its own definition based primarily on selected dictionary definitions and its own research.

**COUNSEL**

Jerry Shapiro (argued), Law Offices of Jerry Shapiro, Encino, California, for Petitioner.

Erica B. Miles (argued) and M. Jocelyn Lopez Wright, Senior Litigation Counsel; Sara J. Bayram, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

WATFORD, Circuit Judge:

We confront in this appeal the same issue that arose in *Martinez-Cedillo v. Sessions*, 896 F.3d 979 (9th Cir. 2018). There, a divided three-judge panel held that California Penal Code § 273a(a) constitutes "a crime of child abuse, child neglect, or child abandonment" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i). A majority of the non-recused active judges voted to rehear *Martinez-Cedillo* en banc, but before the en banc court could issue a decision, the petitioner passed away. The en banc court therefore dismissed the appeal as moot and vacated the three-judge panel decision. Without binding precedent on point, we must revisit whether California Penal Code § 273a(a) qualifies as "a crime of child abuse, child neglect, or child abandonment." We hold that it does not.

I

Rafael Diaz-Rodriguez has been a lawful permanent resident of the United States since 1990. He and his partner have two children together, both of whom are U.S. citizens.

In 2003 and 2009, Diaz-Rodriguez was stopped by the police while driving under the influence of alcohol with one of his children in the car. On both occasions, he was convicted of felony child endangerment in violation of California Penal Code § 273a(a). As relevant here, that statute punishes anyone who, "having the care or custody of any child," and under circumstances likely to produce great bodily harm or death, "willfully causes or permits that child to be placed in a situation where his or her person or health is endangered." Cal. Penal Code § 273a(a).[1] Although the statute requires the defendant to act "willfully," the California Supreme Court has held that criminal negligence suffices, such that the defendant need not be subjectively aware of the risk of harm involved. *People v. Valdez*, 42 P.3d 511, 513–14, 518–19 (Cal. 2002).

---

[1] California Penal Code § 273a(a) provides in full:

> Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.

The statute contains a separate provision punishing as a misdemeanor the same acts when committed "under circumstances or conditions other than those likely to produce great bodily harm or death." Cal. Penal Code § 273a(b); *see Fregozo v. Holder*, 576 F.3d 1030, 1037–38 (9th Cir. 2009).

In 2012, the Department of Homeland Security initiated removal proceedings against Diaz-Rodriguez based on his 2009 child endangerment conviction.  The agency alleged that the conviction rendered Diaz-Rodriguez removable under 8 U.S.C. § 1227(a)(2)(E)(i), a provision of the Immigration and Nationality Act (INA) authorizing the removal of a non-citizen who "at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment."  An immigration judge held that a conviction under California Penal Code § 273a(a) qualifies as a conviction for "a crime of child abuse, child neglect, or child abandonment," thus rendering Diaz-Rodriguez removable. The judge also denied Diaz-Rodriguez's application for cancellation of removal under 8 U.S.C. § 1229b(a) as a matter of discretion.  The Board of Immigration Appeals (BIA) affirmed the immigration judge's rulings.  Diaz-Rodriguez petitions for review of the BIA's decision, challenging only the determination that he is removable based on his conviction under California Penal Code § 273a(a).

## II

As noted at the outset, a prior panel of this court confronted the same issue before us.  The three-judge panel in *Martinez-Cedillo* was asked to decide whether California Penal Code § 273a(a) qualifies as "a crime of child abuse, child neglect, or child abandonment" under 8 U.S.C. § 1227(a)(2)(E)(i).  896 F.3d at 982.  In determining the elements of the generic federal offense described by the phrase "a crime of child abuse, child neglect, or child abandonment," the panel applied the two-step framework from *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  At step one, the panel

held that the phrase is ambiguous as to whether it includes criminal offenses, such as California Penal Code § 273a(a), that punish negligent endangerment of a child.  896 F.3d at 987.  At step two, over a dissent by Judge Wardlaw, the panel deferred to the BIA's interpretation of that phrase in *Matter of Soram*, 25 I. & N. Dec. 378 (BIA 2010).  In *Soram*, the BIA held that the phrase "a crime of child abuse, child neglect, or child abandonment" is sufficiently capacious to encompass child endangerment offenses committed with a *mens rea* of at least criminal negligence.  *Id.* at 380–81. After deferring to the BIA's definition of the generic federal offense, the panel in *Martinez-Cedillo* concluded that a conviction under California Penal Code § 273a(a) qualifies categorically as a conviction for "a crime of child abuse, child neglect, or child abandonment."  896 F.3d at 992–94.

We are not bound by *Martinez-Cedillo*'s resolution of this issue.  The three-judge panel's decision was rendered non-precedential when the full court agreed to rehear the case en banc, 918 F.3d 601 (9th Cir. 2019), and the en banc court later vacated the panel's decision when it dismissed the appeal as moot, 923 F.3d 1162 (9th Cir. 2019).  Given these developments, all agree that *Martinez-Cedillo* itself is no longer binding precedent.

During the interval between the three-judge panel's decision in *Martinez-Cedillo* and the full court's decision to rehear the case en banc, two other panels issued published opinions that relied on *Martinez-Cedillo* in holding that the BIA's decision in *Soram* is entitled to deference under *Chevron*.  *See Menendez v. Whitaker*, 908 F.3d 467, 474 (9th Cir. 2018); *Alvarez-Cerriteno v. Sessions*, 899 F.3d 774, 781 (9th Cir. 2018).  Those decisions have not been vacated.  As a three-judge panel, we are ordinarily bound to follow published decisions issued by prior panels.  *See Miller v.*

*Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). The unusual circumstances presented here, however, lead us to conclude that this case falls outside the scope of the general rule.

Both *Alvarez-Cerriteno* and *Menendez* were decided shortly after issuance of the opinion in *Martinez-Cedillo*, during the period in which en banc review in *Martinez-Cedillo* was under consideration.[2] Both decisions simply cited *Martinez-Cedillo* as having settled that *Soram* is entitled to deference under *Chevron*; neither engaged in any independent analysis of the issue. The panels were not free to engage in any such analysis, for they were bound at the time to follow *Martinez-Cedillo*. Indeed, one of the panel members in *Alvarez-Cerriteno* expressly noted that, had she *not* been bound by *Martinez-Cedillo*, she would have "rule[d] in accord with Judge Wardlaw's dissent in that case." 899 F.3d at 785 (Berzon, J., concurring).

In both cases, despite following *Martinez-Cedillo* and deferring to *Soram*'s definition of "a crime of child abuse, child neglect, or child abandonment," the panels nonetheless ruled in the petitioners' favor on the ground that the offenses in question were broader than the generic federal offense, even as defined by the BIA. *Menendez*, 908 F.3d at 474–75; *Alvarez-Cerriteno*, 899 F.3d at 783–84. Not surprisingly, neither of the petitioners sought en banc review. Nor was there any reason for an off-panel judge to call for rehearing en banc *sua sponte* so that those cases could be held pending

---

[2] *Martinez-Cedillo* was decided on July 23, 2018, *Alvarez-Cerriteno* on August 8, 2018, and *Menendez* on November 8, 2018. The petitioner in *Martinez-Cedillo* filed his petition for rehearing en banc on October 22, 2018, shortly before *Menendez* was decided. The full court agreed to rehear *Martinez-Cedillo* en banc on March 18, 2019.

the outcome of en banc proceedings in *Martinez-Cedillo*. Even if the en banc court had ultimately adopted the position of the dissent in *Martinez-Cedillo*, doing so would not have affected the outcome in either *Alvarez-Cerriteno* or *Menendez*. Moreover, during the window in which a *sua sponte* en banc call could have been made in those cases, no one could have anticipated that *Martinez-Cedillo* would eventually be dismissed as moot, thereby precluding the full court from resolving whether the BIA's decision in *Soram* should receive deference under *Chevron*.

Given this unique sequence of events, we do not think *Alvarez-Cerriteno* or *Menendez* can now be viewed as binding circuit precedent on whether *Soram* is entitled to *Chevron* deference, any more than *Martinez-Cedillo* itself can. Both *Alvarez-Cerriteno* and *Menendez* simply followed *Martinez-Cedillo* as then-binding circuit precedent without engaging in any independent analysis of the deference issue, and both decisions were effectively insulated from en banc review on the legal issue decided in *Martinez-Cedillo*. As a result, their status as circuit precedent on whether *Soram* is entitled to deference rises or falls with the status of *Martinez-Cedillo*. Since the opinion in *Martinez-Cedillo* was vacated and deemed non-precedential by the en banc court, we must decide anew whether Diaz-Rodriguez's conviction under California Penal Code § 273a(a) renders him removable under 8 U.S.C. § 1227(a)(2)(E)(i).

The dissent takes issue with this treatment of *Alvarez-Cerriteno* and *Menendez*, arguing that it runs afoul of this circuit's rule "that a three-judge panel is 'bound by the prior decision of another three-judge panel,'" which "'gives way when, but only when, the earlier decision is clearly irreconcilable with the holding or reasoning of intervening authority from our court sitting en banc or the Supreme

Court.'" Dissent at 32–33 (quoting *Aleman Gonzalez v. Barr*, 955 F.3d 762, 765 (9th Cir. 2020), *cert. granted*, 2021 WL 3711642 (U.S. Aug. 23, 2021) (No. 20-322)). But the decisions in *Alvarez-Cerriteno* and *Menendez* are in fact irreconcilable with a subsequent decision of the court sitting en banc: As already stated, their reliance on the decision of the three-judge panel in *Martinez-Cedillo* is in direct conflict with the en banc court's decision to designate that decision as non-precedential—a designation explicitly noted in the order of the en banc court dismissing the appeal as moot. *See* 923 F.3d at 1162. As a result, the circumstances here, though unusual, are such that the otherwise standard rule of precedent gives way.[3]

III

To determine whether a conviction under California Penal Code § 273a(a) constitutes a conviction for "a crime of child abuse, child neglect, or child abandonment," we employ the now-familiar categorical approach. Under that approach, we ask whether "the least of the acts criminalized by the state statute" falls within the definition of the federal offense. *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017). If so, the two offenses are a categorical match

---

[3] The dissent also claims that this approach to *Alvarez-Cerriteno* and *Menendez* is "not sound as a practical matter" because an attorney looking to see whether *Martinez-Cedillo* "remains good law" would learn "only that [the decision] was vacated," and not that an en banc decision undercut it. Dissent at 34–35. But this is not correct. Because the en banc order dismissing the appeal explicitly states that the "three-judge panel disposition . . . was designated as non-precedential," 923 F.3d at 1162, an attorney conducting an appropriate review of the *Martinez-Cedillo* decision would be confronted with the fact that an en banc court subsequently deemed the decision one that could not properly be relied upon.

and the state conviction may serve as a ground for removal. *Id.*

Identifying the least of the acts criminalized under California Penal Code § 273a(a) is straightforward.    It consists of causing or permitting a child "to be placed in a situation where his or her person or health is endangered," committed with a *mens rea* of criminal negligence.[4]  Such an offense, involving a serious risk of harm to the child but no resulting injury, is commonly referred to as a child endangerment offense.  That is the sense in which we use the term "child endangerment" here.

Identifying the elements of the federal offense at issue is more complicated.    Congress enacted 8 U.S.C. § 1227(a)(2)(E)(i) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).  Pub. L. No. 104-208, § 350(a), 110 Stat. 3009-546, 3009-640. Without further defining the phrase, § 1227(a)(2)(E)(i) added "a crime of child abuse, child neglect, or child abandonment" to the list of offenses that render non-citizens removable from the United States.  When a federal statute specifies an offense by name without further defining its elements, we assume that Congress intended to rely on a uniform, generic version of the offense, drawn from the ordinary meaning of the term at the time Congress enacted the statute. *Esquivel-Quintana*, 137 S. Ct. at 1569; *Perrin v. United States*, 444 U.S. 37, 42 (1979).  We share the task of identifying the elements of the generic federal offense with

---

[4] Because California Penal Code § 273a(a) is not divisible, *see Ramirez v. Lynch*, 810 F.3d 1127, 1138 (9th Cir. 2016), we need not consider application of the so-called modified categorical approach. *See Esquivel-Quintana*, 137 S. Ct. at 1568 n.1.

the BIA because it is the agency charged with implementing statutory provisions specifying the grounds for removal.

In two decisions, the BIA has attempted to formulate a definition of the generic federal offense described by the phrase "a crime of child abuse, child neglect, or child abandonment." In *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503 (BIA 2008), the agency interpreted "crime of child abuse" to mean "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Id.* at 512. The Board left open whether this definition included state offenses "in which a child is merely placed or allowed to remain in a dangerous situation, without any element in the statute requiring ensuing harm." *Id.* at 518 n.2 (Pauley, concurring). The BIA answered that question soon afterward in *Matter of Soram*, 25 I. & N. Dec. 378 (BIA 2010), where it held that "the term 'crime of child abuse,' as described in *Velazquez-Herrera*, is not limited to offenses requiring proof of injury to the child." *Id.* at 381. The agency also clarified that, in its view, the phrase "a crime of child abuse, child neglect, or child abandonment" "denotes a unitary concept," such that the agency's "broad definition of child abuse describes the entire phrase." *Id.* After *Soram*, then, non-citizens convicted of negligent child endangerment offenses were subject to removal under 8 U.S.C. § 1227(a)(2)(E)(i).

Unlike the three-judge panel in *Martinez-Cedillo*, we do not think the BIA's decision in *Soram* is entitled to deference on the question whether negligent child endangerment offenses are encompassed within the phrase "a crime of child abuse, child neglect, or child abandonment." In our view, as to that specific question, "Congress has supplied a clear and

unambiguous answer," precluding deference under *Chevron* step one. *Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018).

In deciding whether deference is owed under *Chevron*, we are guided by the Supreme Court's resolution of a similar issue in *Esquivel-Quintana*. There, the Court addressed another conviction-based provision enacted as part of IIRIRA, this one making conviction for "sexual abuse of a minor" grounds for removal. 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(A). The question before the Court was whether the generic federal definition of this offense, as applied to the crime of statutory rape, requires the victim to be younger than 16. The BIA had held that the generic federal definition included crimes in which the victim was 16 or 17, as long as there was "a meaningful age difference between the victim and the perpetrator." *Esquivel-Quintana*, 137 S. Ct. at 1567 (quoting *Matter of Esquivel-Quintana*, 26 I. & N. Dec. 469, 477 (BIA 2015)). The Court rejected the BIA's interpretation under *Chevron* step one and held that the generic federal definition of sexual abuse of a minor "requires the age of the victim to be less than 16." *Id.* at 1572–73.

Although the precise holding of *Esquivel-Quintana* has no direct bearing on the issue before us, the Court's reasoning is nonetheless highly instructive. After observing that Congress had not defined the term "sexual abuse of a minor," *id.* at 1569, the Court did not throw up its hands and declare the statute ambiguous with respect to the specific question raised there. The Court instead relied on "the normal tools of statutory interpretation" to determine whether the statute provided a clear answer. *Id.* The Court looked to definitions from contemporary legal dictionaries, statutory structure, state criminal codes in effect at the time of IIRIRA's enactment, and a related federal criminal

statute. *Id.* at 1569–72. Based on its review of those sources, the Court concluded that "the statute, read in context, unambiguously forecloses the Board's interpretation," rendering deference to the agency under *Chevron* unwarranted. *Id.* at 1572.

As discussed below, three of the four sources of statutory meaning the Court consulted in *Esquivel-Quintana*— contemporary legal dictionaries, statutory structure, and contemporary state criminal codes—support the conclusion that § 1227(a)(2)(E)(i) unambiguously forecloses the BIA's interpretation of the statute in *Soram*. (The fourth source, related federal criminal statutes, does not aid our analysis. While there are various federal statutes defining child abuse and neglect, *see Velazquez-Herrera*, 24 I. & N. Dec. at 509–11, they all arise in the civil context and do not purport to define criminal conduct.)

*Legal dictionaries*. Contemporary legal dictionaries from shortly before and after IIRIRA's enactment indicate that child abuse, child neglect, and child abandonment were well-understood concepts with distinct meanings that do not encompass negligent child endangerment offenses.

The common meaning of "child abuse" in 1996 required the infliction of some form of injury upon the child. One of the principal dictionaries cited by the Court in *Esquivel-Quintana* defines the term as "the infliction of physical or emotional injury" on a child, including sexual abuse. Merriam-Webster's Dictionary of Law 4, 76 (1996). The two editions of Black's Law Dictionary that bookend IIRIRA's enactment contain similar definitions. The Sixth Edition defines "child abuse" as "[a]ny form of cruelty to a child's physical, moral or mental well-being," with "cruelty" defined as "[t]he intentional and malicious infliction of physical or mental suffering." Black's Law Dictionary 239,

377 (6th ed. 1990) (Black's Sixth Edition).  The Seventh Edition defines "child abuse" as "[a]n intentional or neglectful physical or emotional injury imposed on a child, including sexual molestation."  Black's Law Dictionary 10, 233 (7th ed. 1999) (Black's Seventh Edition).  Each of these definitions excludes the child endangerment offense described in California Penal Code § 273a(a) because that offense does not require the infliction of any injury on the child.

The common meaning of the term "child neglect" in 1996 required a sustained failure by a child's caregiver to provide for the child's basic needs.  For example, Merriam-Webster's defines "neglect" to mean "a failure to provide a child under one's care with proper food, clothing, shelter, supervision, medical care, or emotional stability."  Merriam-Webster's Dictionary of Law 324.  The Sixth Edition of Black's Law Dictionary does not define the term "child neglect" directly, but it defines "neglected child" to mean a child whose "parent or custodian, by reason of cruelty, mental incapacity, immorality or depravity, is unfit properly to care for him, or neglects or refuses to provide necessary physical, affectional, medical, surgical, or institutional or hospital care for him, or he is in such condition of want or suffering, or is under such improper care or control as to endanger his morals or health."  Black's Sixth Edition 1032.  The Seventh Edition defines "child neglect" to mean "[t]he failure of a person responsible for a minor to care for the minor's emotional or physical needs."  Black's Seventh Edition 233; *see also id.* (defining "neglected child" as: "1. A child whose parents or legal custodians are unfit to care for him or her for reasons of cruelty, immorality, or incapacity.  2. A child whose parents or legal custodians refuse to provide the necessary care and medical services for the child.").  These definitions exclude child endangerment

offenses, such as California Penal Code § 273a(a), that punish one-time negligent acts or omissions exposing a child to the risk of harm.

The same is true of the common meaning in 1996 of "child abandonment," a term that was understood to involve the forsaking of one's parental duties. As relevant here, Merriam-Webster's defines "abandonment" as the "failure to communicate with or provide financial support for one's child over a period of time that shows a purpose to forgo parental duties and rights." Merriam-Webster's Dictionary of Law 1; *see also* Black's Sixth Edition 2 (defining "abandonment" with respect to children as "[d]esertion or willful forsaking"; "[f]oregoing parental duties"). The Seventh Edition of Black's Law Dictionary defines abandonment more simply as "[t]he act of leaving a spouse or child willfully and without an intent to return." Black's Seventh Edition 2; *see also* Bryan A. Garner, A Dictionary of Modern Legal Usage 3 (2d ed. 1995) (abandon: "in family law, to leave children or a spouse willfully and without an intent to return"). No one contends that one-time negligent acts or omissions exposing a child to the risk of harm fall within the common meaning of "child abandonment."

*Statutory structure*. The contemporary definitions of child abuse, child neglect, and child abandonment make clear that the ordinary meaning of those terms in 1996 did not encompass negligent child endangerment offenses. The question becomes whether Congress's omission of child endangerment from the list of crimes specified in § 1227(a)(2)(E)(i) was the product of deliberate choice or instead mere inadvertence, thereby leaving a gap in the statute for the BIA to fill. Statutory structure sheds light on that inquiry.

Under the common meaning of the terms child abuse, child neglect, and child abandonment discussed above, non-citizens convicted of those crimes have either inflicted harm on a child or forsaken their parental responsibilities altogether. Making such conduct a ground for removal will in many cases result in separation of the victims of those offenses from the convicted parent, at least in cases where (as here) the children are U.S. citizens or otherwise have lawful status in the United States. Congress could readily have viewed the forced separation of parent and child—and its impact on the child's future well-being—with less concern when the child has been abused, neglected, or abandoned by the very parent facing removal.

We do not think the same can be said when the parent in question has been convicted of negligent child endangerment. That offense can be predicated on a single lapse in parental judgment, such as leaving young children at home alone while the parent is at work. *See, e.g.*, *Ibarra v. Holder*, 736 F.3d 903, 905 & n.3 (10th Cir. 2013). It is easy to see why Congress could have viewed this less-serious form of misconduct as an unacceptable basis under the immigration laws for separating parents from their children.

A neighboring provision of the INA suggests that Congress deliberately omitted child endangerment from the list of offenses specified in § 1227(a)(2)(E)(i). To ameliorate the harshness of the removal sanction, Congress has provided a form of discretionary relief known as cancellation of removal. *See* 8 U.S.C. § 1229b. Non-citizens who are not lawful permanent residents are eligible for cancellation of removal if they can show, among other things, that their removal would result in "exceptional and extremely unusual hardship" to their child, provided the

child is a U.S. citizen or lawful permanent resident. § 1229b(b)(1)(D). However, a conviction for "a crime of child abuse, child neglect, or child abandonment" under § 1227(a)(2)(E)(i) not only renders a non-citizen removable but also makes him or her statutorily ineligible for this discretionary form of relief. § 1229b(b)(1)(C). Thus, under the BIA's reading of § 1227(a)(2)(E)(i), a non-citizen convicted of negligently endangering her child on a single occasion is categorically ineligible for cancellation of removal even if she can prove that "separation would cause 'exceptional and extremely unusual hardship' to that same child." *Matthews v. Barr*, 927 F.3d 606, 625 (2d Cir. 2019) (Carney, J., dissenting). Mandating separation of parent and child in those circumstances would be decidedly at odds with the otherwise child-protective aim of § 1227(a)(2)(E)(i).

*State criminal codes*. The Supreme Court has held that a survey of state criminal codes as they stood at the time Congress enacted the statute in question provides useful context when arriving at the generic federal definition of an offense. *See, e.g.*, *Esquivel-Quintana*, 137 S. Ct. at 1571 & n.3; *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189–90 (2007); *Perrin*, 444 U.S. at 44–45. Here, we need not consult state criminal codes to decide whether *all* child endangerment offenses are included within the generic federal definition of "a crime of child abuse, child neglect, or child abandonment." The narrower question in this case is whether *negligent* child endangerment offenses are included within the generic definition, since that is the least of the acts criminalized under California Penal Code § 273a(a).

In 1996, only a handful of States criminalized conduct that would constitute child endangerment under statutes proscribing "abuse," "neglect," or "abandonment." But to

err on the side of caution, we conducted a survey of state criminal codes to identify any State that criminalized negligent child endangerment irrespective of the label used. Such a survey confirms that, even when broadly construed, the phrase "a crime of child abuse, child neglect, or child abandonment" does not encompass negligent child endangerment offenses.

At the time of IIRIRA's enactment, only 14 States criminalized child endangerment committed with a *mens rea* of criminal negligence. *See* Appendix A. The other 36 States did not criminalize such conduct. Twenty-three States, along with the District of Columbia, criminalized child endangerment only if committed with a *mens rea* of at least recklessness, *see* Appendix B, while the remaining 13 States did not criminalize child endangerment at all, *see* Appendix C.[5]

The general consensus drawn from state criminal codes supports the conclusion that § 1227(a)(2)(E)(i) unambiguously forecloses the BIA's interpretation of the statute in *Soram*. *See Esquivel-Quintana*, 137 S. Ct. at 1572. In *Esquivel-Quintana*, 16 States set the age of consent for statutory rape offenses at 17 or 18, whereas 31 States and the District of Columbia set the age of consent at 16. *Id.* at 1571. The Supreme Court held that the consensus view of 31 States and the District of Columbia supported the conclusion that Congress unambiguously foreclosed the BIA's attempt to

---

[5] The Tenth Circuit reported slightly different numbers in *Ibarra* because its survey focused on all offenses against children not requiring a resulting injury to the child, including offenses constituting child neglect or child abandonment. *See Ibarra*, 736 F.3d at 918–21. Our survey, by contrast, focuses solely on child endangerment offenses because that is the offense for which Diaz-Rodriguez was convicted.

define the generic offense of sexual abuse of a minor to include an age of consent of 18. *Id.* at 1571–72. Here, the consensus view of the States cuts even more strongly against the BIA's interpretation, as 36 States and the District of Columbia excluded negligent child endangerment from the realm of conduct that could be deemed covered by the phrase "a crime of child abuse, child neglect, or child abandonment."

\*          \*          \*

We conclude that the text of 8 U.S.C. § 1227(a)(2)(E)(i) unambiguously forecloses the BIA's interpretation of "a crime of child abuse, child neglect, or child abandonment" as encompassing negligent child endangerment offenses. *See Ibarra*, 736 F.3d at 917–18 (reaching same conclusion); *cf. Zarate-Alvarez v. Garland*, 994 F.3d 1158, 1164–65 (10th Cir. 2021) (per curiam) (reaching opposite conclusion as to child endangerment offense requiring knowing or reckless conduct). As in *Esquivel-Quintana*, 137 S. Ct. at 1572, deference under *Chevron* is therefore unwarranted.

While several of our sister circuits have deferred to the BIA's decision in *Soram*, we find those decisions both distinguishable and unpersuasive. They are distinguishable because none involved a negligent child endangerment offense, the specific offense addressed here, and they are unpersuasive because none engaged in any meaningful analysis of the text of § 1227(a)(2)(E)(i) at step one of the *Chevron* analysis. *See Garcia v. Barr*, 969 F.3d 129, 133–34 & n.1 (5th Cir. 2020); *Mondragon-Gonzalez v. Attorney General*, 884 F.3d 155, 158–59 (3d Cir. 2018); *Pierre v. U.S. Attorney General*, 879 F.3d 1241, 1249–50 (11th Cir. 2018); *Florez v. Holder*, 779 F.3d 207, 209, 211 (2d Cir. 2015). After noting that Congress did not define the phrase "a crime of child abuse, child neglect, or child abandonment," they

declared the statute ambiguous without first "exhaust[ing] all the 'traditional tools' of construction." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (quoting *Chevron*, 467 U.S. at 843 n.9). In our view, this "cursory analysis" of statutory text, *Pereira*, 138 S. Ct. at 2120 (Kennedy, J., concurring), cedes too much power to the BIA to expand the grounds for removal beyond those specified by Congress. We agree with the Tenth Circuit's observation that "while the statutory text at issue here does contain *some* ambiguity, Congress's intent is not so opaque as to grant the BIA the sweeping interpretive license it has taken." *Ibarra*, 736 F.3d at 910.[6]

Because California Penal Code § 273a(a) criminalizes conduct that falls outside the generic federal definition, it is not a categorical match for "a crime of child abuse, child neglect, or child abandonment." Contrary to the BIA's ruling, Diaz-Rodriguez's conviction under that statute does not render him removable from the United States under 8 U.S.C. § 1227(a)(2)(E)(i).

**PETITION FOR REVIEW GRANTED.**

---

[6] The dissent suggests that the Tenth Circuit, in *Ibarra*, "implicitly recognized the statute's ambiguity" even as it ultimately declined to defer to the BIA's interpretation. Dissent at 38 (citing *Ibarra*, 736 F.3d at 910). However, while the *Ibarra* court did recognize that the statute contains "*some* ambiguity," it ultimately held that the "plain language of the statute"—a *Chevron* step one inquiry—precluded deference to the BIA on the interpretation of the particular language at issue. 736 F.3d at 910.

# APPENDIX A

In 1996, the following 14 States criminalized child endangerment committed with a *mens rea* of negligence:

| Alabama | Ala. Code §§ 12-15-1(10)(f), 13A-13-6(a)(2); *see Pearson v. State*, 601 So. 2d 1119, 1126 (Ala. Crim. App. 1992) |
| --- | --- |
| Arizona | Ariz. Rev. Stat. Ann. § 13-3623(B)(3), (C)(3) |
| California | Cal. Penal Code § 273a; *see People v. Valdez*, 42 P.3d 511, 517–18 (Cal. 2002) |
| Colorado | Colo. Rev. Stat. Ann. § 18-6-401(1), (7)(b)(II) |
| Missouri | Mo. Rev. Stat. § 568.050(1) |
| Nebraska | Neb. Rev. Stat. § 28-707(1)(a) |
| New Mexico | N.M. Stat. Ann. § 30-6-1(C)(1) |
| New York | N.Y. Penal Law § 260.10(2); N.Y. Fam. Ct. Act § 1012(e), (f); *see People v. Scully*, 513 N.Y.S.2d 625, 627 (Crim. Ct. 1987) |
| Oregon | Or. Rev. Stat. § 163.545(1) |
| South Carolina | S.C. Code Ann. § 20-7-50(A)(1); *see State v. Fowler*, 470 S.E.2d 393, 396 (S.C. Ct. App. 1996) |
| South Dakota | S.D. Codified Laws §§ 26-8A-2(6), 26-9-1 |

| Texas | Tex. Penal Code Ann. § 22.041(c) |
|---|---|
| Virginia | Va. Code Ann. §§ 16.1-228(1), 18.2-371; *see Miller v. Commonwealth*, 769 S.E.2d 706, 713–14 (Va. Ct. App. 2015) |
| Wyoming | Wyo. Stat. Ann. § 6-4-403(a)(ii) |

## APPENDIX B

In 1996, the following 23 States and the District of Columbia criminalized child endangerment if committed with a *mens rea* of at least recklessness:

| | |
|---|---|
| Arkansas | Ark. Code Ann. § 5-27-204(a) |
| Connecticut | Conn. Gen. Stat. § 53-21(1); see State v. Dennis, 188 A.2d 65, 66–67 (Conn. 1963) |
| Delaware | Del. Code Ann. tit. 11, § 1102(a) |
| District of Columbia | D.C. Code § 22-1101(b) |
| Hawaii | Haw. Rev. Stat. § 709-904(2) |
| Idaho | Idaho Code § 18-1501(1)–(2); see State v. Young, 64 P.3d 296, 299 (Idaho 2002) |
| Illinois | 720 Ill. Comp. Stat. 5/12-21.6; see People v. Jordan, 843 N.E.2d 870, 879 (Ill. 2006) |
| Indiana | Ind. Code § 35-46-1-4(a)(1) |
| Iowa | Iowa Code § 726.6(1)(a) |
| Kansas | Kan. Stat. Ann. § 21-3608(a) |
| Kentucky | Ky. Rev. Stat. Ann. §§ 530.060(1), 600.020(1) |
| Maine | Me. Stat. tit. 17-A, § 554(1)(C) |
| Minnesota | Minn. Stat. § 609.378(b)(1) |

| Montana | Mont. Code Ann. § 45-5-622(1) |
| --- | --- |
| New Hampshire | N.H. Rev. Stat. Ann. § 639:3(I) |
| North Carolina | N.C. Gen. Stat. § 14-318.2(a); see State v. Hunter, 270 S.E.2d 120, 122 (N.C. Ct. App. 1980) |
| Ohio | Ohio Rev. Code Ann. § 2919.22(A); see State v. Barton, 594 N.E.2d 702, 707 n.1 (Ohio Ct. App. 1991) |
| Oklahoma | Okla. Stat. tit. 10, §§ 7102(B)(1), 7115; see Ball v. State, 173 P.3d 81, 92 (Okla. Crim. App. 2007) |
| Pennsylvania | 18 Pa. Cons. Stat. § 4304(a) |
| Tennessee | Tenn. Code Ann. §§ 37-1-102(b)(1), (b)(12)(G); 37-1-157(a); see Konvalinka v. Chattanooga-Hamilton County Hospital Authority, 249 S.W.3d 346, 357 (Tenn. 2008) |
| Vermont | Vt. Stat. Ann. tit. 13, § 1304; see State v. Amsden, 75 A.3d 612, 624 (Vt. 2013) |
| Washington | Wash. Rev. Code § 9A.42.030(1) |
| West Virginia | W. Va. Code Ann. §§ 61-8D-1(6), 61-8D-4(e); see 2014 W. Va. Acts 451 |
| Wisconsin | Wis. Stat. §§ 948.03(4), 948.04(2) |

## APPENDIX C

In 1996, the following 13 States did not criminalize child endangerment at all. The cited statutory provisions refer to the jurisdiction's other crimes against children.

| | |
|---|---|
| Alaska | Alaska Stat. §§ 11.51.100 (intentional desertion), 11.51.120 (criminal nonsupport) |
| Florida | Fla. Stat. §§ 39.01 (definitions), 827.04 (abuse), 827.05 (neglect) |
| Georgia | Ga. Code Ann. §§ 16-5-70 (abuse and neglect), 19-10-1 (abandonment) |
| Louisiana | La. Stat. Ann. § 14:79.1 (abandonment) |
| Maryland | Md. Code Ann., Art. 27, § 35C (abuse); Cts. & Jud. Proc. § 3-831 (contribution to delinquency); Fam. Law §§ 10-203 (nonsupport and desertion), 10-219 (desertion) |
| Massachusetts | Mass. Gen. Laws ch. 119, § 39; ch. 273, § 1 (abandonment) |
| Michigan | Mich. Comp. Laws §§ 750.135 (abandonment), 750.136b (abuse) |
| Mississippi | Miss. Code Ann. §§ 43-21-105(m) (defining "abused child"); 97-5-1 (abandonment); 97-5-39(1), (2) (contributing to neglect; abuse) |
| Nevada | Nev. Rev. Stat. §§ 200.508, 432B.140 (abuse and neglect) |

| New Jersey | N.J. Stat. Ann. §§ 2C:24-4 (moral or sexual endangerment); 9:6-1, 9:6-3 (abuse, abandonment, cruelty, and neglect) |
| --- | --- |
| North Dakota | N.D. Cent. Code §§ 14-07-15 (abandonment), 14-09-22 (abuse and neglect) |
| Rhode Island | R.I. Gen. Laws §§ 11-2-1 (abandonment), 11-9-5 (cruelty and neglect), 11-9-5.3 (abuse) |
| Utah | Utah Code Ann. § 76-5-109 (abuse) |

CALLAHAN, Circuit Judge, dissenting:

I am compelled to dissent for two reasons. First, I do not agree that despite the "unique sequences of events" resulting in *Martinez-Cedillo v. Sessions*, 896 F.3d 979 (9th Cir. 2018), being vacated, 918 F.3d 601 (9th Cir. 2019), we as a three-judge panel may disregard our published decisions in *Menendez v. Whitaker*, 908 F.3d 467 (9th Cir. 2018), and *Alvarez-Cerriteno v. Sessions*, 899 F.3d 774 (9th Cir. 2018). Second, even if the issue were properly before us, I do not agree with the majority's peculiar reading of "a crime of child abuse, child neglect, or child abandonment" as not encompassing a child endangerment offense committed with a mens rea of at least criminal negligence. The majority's suggestion that 8 U.S.C. § 1227(a)(2)(E)(i)[1] is unambiguous is contrary to our precedent and the unanimous opinions of our sister circuits. Moreover, the majority fails to recognize that our task is limited to reviewing the agency's interpretation for "reasonableness." Instead, the majority proffers its own definition of "crime of child abuse," based primarily on selected dictionary definitions and its own research. The majority justifies its creative approach by urging that negligent child endangerment should not be a basis for separating parents from their children. But this is an issue on which reasonable minds may differ and the majority's approach misperceives our limited role in reviewing agency decisions.

---

[1] The statute provides that a person shall be removed "who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment."

## I.

Although the majority is concerned that a "single lapse in parental judgment" might force the separation of parent and child (Maj. at 18), this is not such a case. Diaz-Rodriguez has an extensive history of alcohol abuse and has been convicted twice for felony child abuse. In 1989, Diaz-Rodriguez pleaded guilty to driving drunk with a blood alcohol content (BAC) of .16. In 1994, he pleaded guilty to driving drunk when his BAC was .12. In 2003, Diaz-Rodriguez drove drunk with his five-year-old son, Rafael, in the car with a blood alcohol level of .20, over twice the legal limit. As a result, he was convicted of drunk driving and felony child abuse under Cal. Penal Code (CPC) § 273a(a). Diaz-Rodriguez picked up another DUI conviction that same year. In 2009, six years later, Diaz-Rodriguez committed the same crime when he drove drunk with his six-year-old daughter, Paula, in the car. As a result, he was again convicted of child abuse under CPC § 273a(a) and drunk driving. When asked why he would drive drunk with his child in the car after being convicted for that same offense before, he reasoned, "I wasn't feeling like I was drunk or I wasn't feeling bad as far as after having had those beers." The Department of Homeland Security initiated removal proceedings against Diaz-Rodriguez based on his 2009 child endangerment conviction.

## II.

In *Martinez-Cedillo*, 896 F.3d 979 (9th Cir. 2018), vacated 923 F.3d 1162 (9th Cir. 2019), we held that California Penal Code § 273a(a) was "categorically a crime of child abuse, neglect, or abandonment as interpreted by the BIA." *Id*. at 981. We found that the BIA's opinions in *Matter of Velasquez-Herrera*, 24 I. & N. Dec. 503 (BIA 2008), and *Matter of Soram*, 25 I. & N. Dec. 378 (BIA 2010),

which expanded the definition of child abuse to include an offense that did not result in actual harm or injury to the child, were reasonable constructions of ambiguous statutory language. *Martinez-Cedillo*, 896 F.3d at 992.

We revisited *Soram* in *Alvarez-Cerriteno v. Sessions*, 899 F.3d 774 (9th Cir. 2018). We applied the *Chevron* two-step analysis which "asks if (1) the INA is ambiguous with regard to what constitutes a 'crime of child abuse' and (2) the BIA's construction in *Soram* reasonably resolves the ambiguity." *Id*. at 781. We then recognized that, in *Martinez-Cedillo*, we had held that "the BIA's interpretation of the generic crime in *Soram* is entitled to *Chevron* deference" and that we were bound by this precedent. *Id*. (citing *Miller v. Gammie,* 335 F.3d 889, 899 (9th Cir. 2003) (en banc)). Thus, the generic "'crime of child abuse,' as used in the INA, includes acts and omissions that (1) are criminally negligent and (2) create at least a 'reasonable probability' that a child will be harmed." *Id.* (citing *Soram*, 25. I & N. Dec. at 385–86).

*Alvarez-Cerriteno* proceeded to hold that the Nevada statute in issue was broader than the federal generic crime because it included instances in which there was only a "'reasonably foreseeable' risk of harm to a child." *Id*. at 784.

We also considered deference to the BIA's interpretation in *Menendez v. Whitaker*, 908 F.3d 467 (9th Cir. 2018). One issue concerned whether a conviction under California Penal Code § 288(c)(1) was a crime of child abuse. We deferred to the BIA's definition of "crime of child abuse" as set out in *Velazquez-Herrera*, 24 I. & N. Dec. 503, and *Soram*, 25 I. & N. 370, citing *Martinez-Cedillo*. *Id*. at 474. We held that, read together, "*Velazquez-Herrera* and *Soram* require (1) a mens rea that rises at least to the level of criminal negligence;

and (2) 'maltreatment' that results in either actual injury to a child, or a 'sufficiently high risk of harm' to a child." *Id*.

*Menendez* ultimately found that § 288(c)(1) was broader than the generic federal definition of "crime of child abuse" because it did not require a mens rea of at least criminal negligence and did not require proof of actual injury "or a 'sufficiently high risk of harm' as an element of the offense." *Id.* at 475.

The three-judge panel's opinion in *Martinez-Cedillo* was declared non-precedential when we voted to rehear it en banc, 918 F.3d 601 (9th Cir. 2019), and the opinion was then vacated after the petitioner died. 923 F.3d 1162 (9th Cir. 2019). But both *Alvarez-Cerriteno* and *Menendez* remain good law. We have cited *Alvarez-Cerriteno* as supporting deference to the BIA's interpretation, *Cortes-Maldonado v. Barr*, 978 F.3d 643, 648 (9th Cir. 2020), as has the Fifth Circuit, *Garcia v. Barr*, 969 F.3d 129, 132, 134 (5th Cir. 2020) (citing *Alvarez-Cerriteno* as deferring to the BIA's interpretation of "crime of child abuse" and ultimately joining "the Second, Third, Ninth, and Eleventh Circuits in holding that the Board's interpretation is entitled to *Chevron* deference").

The majority nonetheless holds that *Alvarez-Cerriteno* and *Menendez*, do not establish "binding circuit precedent" because the opinions simply follow *Martinez-Cedillo* "without engaging in any independent analysis of the deference issue," and because "both decisions were effectively insulated from en banc review on the legal issue decided in *Martinez-Cedillo*." Maj. at 10.

The majority cites no authority for its approach which is contrary to our established case law on precedent. In *Gonzalez v. Barr*, 955 F.3d 762, 765 (9th Cir. 2020), we

reiterated that a three-judge panel is "bound by the prior decision of another three-judge panel" and "gives way when, but only when, the earlier decision is clearly irreconcilable with the holding or reasoning of intervening authority from our court sitting en banc or the Supreme Court." *See also Miller v. Gammie*, 335 F.3d 889, 893, 899–90 (9th Cir. 2003). Moreover, the "clearly irreconcilable" requirement is a "high standard," and when "we can apply our precedent consistently with that of the higher authority, we *must* do so." *Id*. (quoting *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019)) (emphasis added). Here, there is no intervening irreconcilable decision by the Supreme Court or the Ninth Circuit. Indeed, if we are going to adopt a new exception to our approach to precedent, such a departure should itself be made by an en banc panel.[2]

Relatedly, the majority's approach is contrary to the principle of stare decisis. *See In re NCCA Athletic Grant in Aid Cap Antitrust Litigation*, 958 F.3d 1239, 1253 (9th Cir. 2020) (reiterating that stare decisis binds today's court to yesterday's decision). In *S & H Packing & Sales v. Tanimura Dist. Inc.*, 850 F.3d 446, 450 (9th Cir. 2017), vacated and reheard en banc 883 F.3d 797 (9th Cir. 2018),

---

[2] The majority's argument that *Alvarez-Cerriteno* and *Menendez* "are in fact irreconcilable with a subsequent decision of the court sitting en banc" (Maj. at 11) mischaracterizes the en banc court orders in *Martinez-Cedillo*. The first order, 918 F.3d 601, noted that the case would be reheard en banc and stated that the three-judge disposition "shall not be cited as precedent." The second order, 923 F.3d 1162, reiterated that the three-judge disposition, which had been designated as non-precedential was vacated and the appeal dismissed. The en banc panel never reached the merits of the *Martinez-Cedillo* opinion. Certainly, the opinion relied upon by *Alverez-Cerriteno* and *Menendez* was vacated but their continued deference to *Soram* is not "irreconcilable" to any Ninth Circuit en banc opinion or order.

we cited *United States v. Lucas*, 963 F.2d 243, 247 (9th Cir. 1992), as "noting that subsequent panels are bound by prior panel decisions and only the en banc court may overrule panel precedent." We explained:

> In some cases, an earlier panel's election not to discuss an argument may prevent future panels from concluding the earlier panel implicitly accepted or rejected an argument. After all, "under the doctrine of stare decisis a case is important only for what it decides— for the 'what,' not for the 'why,' and not for the 'how.'" In re Osborne, 76 F.3d 306, 309 (9th Cir. 1996) ("[T]he doctrine of stare decisis concerns the holdings of previous cases, not the rationales[.]").

850 F.3d at 450. The majority, without any supporting authority, ignores "what" *Alvarez-Cerriteno* and *Menendez* decided because it does not agree with the "why" of those opinions. Again, even if this were a sound approach, it is a decision reserved for an en banc panel.

Moreover, the proposal is not sound as a practical matter. How is one to determine whether the holding in *Alvarez-Cerriteno* that the Ninth Circuit defers to the BIA's reasonable interpretation of "crime of child abuse" is not precedential? The opinion remains extant and has even been cited by the Ninth Circuit as supporting deference to the BIA's interpretation. *See Cortes-Maldonado*, 978 F.3d at 648.[3] Nor can the deference be dismissed as dictum

---

[3] Because *Cortes-Maldonado* was decided well after *Martinez-Cedillo* was dismissed, it rebuts the majority's suggestion that *Alvarez-*

because deference to the BIA's decision is central to the panel's explanation for why the Nevada statute there at issue does not come within the BIA's definition of "crime of child abuse." The majority presumably requires that an attorney look to see if the authority cited in *Alvarez-Cerriteno* (here *Martinez-Cedillo*) remains good law. But this research would disclose only that *Martinez-Cedillo* was vacated. It would not disclose a contrary Ninth Circuit opinion, because there is no such opinion.

The majority's holding that *Alvarez-Cerriteno* and *Menendez* may be dismissed as precedent because *Martinez-Cedillo*, which *Alvarez-Cerriteno* and *Menendez* cite as authority, was vacated, is contrary to the Ninth Circuit's position on precedent, beyond the authority of a three-judge panel, and wrong.[4]

### III.

The majority recognizes the two-step framework set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), *see* Maj. at 7, and purports to disapprove of the BIA's definition of "crime of child abuse" under the first *Chevron* prong. Its analysis of "crime of child abuse" starts with a discussion of *Esquivel-*

---

*Cerriteno*'s precedential value is undercut because it was decided while en banc proceedings were pending in *Martinez-Cedillo*.

[4] The majority's cure seems more viral than the disease. If *Alvarez-Cerriteno* and *Menendez* need to be overruled, the majority could seek to have this appeal heard en banc. Such an approach is consistent with our approach to precedent. Nor is this a situation that is likely to reoccur as it arises out of a relatively unusual situation in which an appeal becomes moot between the time that we vote to grant rehearing en banc and when we hear the case en banc.

*Quintana v. Sessions*, 137 S. Ct. 1562 (2017). There the Court held that a "state statute criminalizing consensual sexual intercourse between a 21-year-old and a 17-year-old" does not qualify "as sexual abuse of a minor under the INA." *Id*. at 1567. The Court concluded that "the statute, read in context, unambiguously forecloses the Board's interpretation." *Id*. at 1572. Contrary to the majority's reading, it is not clear whether the Supreme Court held the federal statute to be unambiguous (the first prong) or that the Board's interpretation of an ambiguous statute was unreasonable (the second prong).

The majority insists that its analysis proceeds under the first prong of *Chevron*. First, the majority states that *Soram* is not entitled to deference because "[i]n our view, as to that specific question, 'Congress has supplied a clear and unambiguous answer' precluding deference under *Chevron* step one." Maj. at 13–14 (quoting *Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018)). Second, it asserts that in *Esquivel-Quintana*, 137 S. Ct. at 1567, the Supreme Court rejected the BIA's interpretation "under *Chevron* step one." Maj. at 14. Third, the majority dismisses contrary decisions by our sister circuits as not having "engaged in any meaningful analysis of the text of § 1227(a)(2)(E)(i) at step one of the *Chevron* analysis." Maj. at 21.

To the extent that the majority asserts that § 1227(a)(2)(E)(i) is unambiguous, it is wrong. Furthermore, its failure to recognize the differences between the approaches mandated by the first and second prongs of *Chevron* contributes to its failure to appreciate our duty to defer to an agency's reasonable interpretation of an ambiguous statute.

Initially, it should be noted that the majority's opinion is the first suggestion that the statute is unambiguous. In

*Martinez-Cedillo*, 896 F.3d at 987, we agreed with "[e]very circuit court to have considered it" that § 1227(a)(2)(E)(i) is ambiguous.    Indeed, Judge Wardlaw in her dissent commented "the majority correctly notes that all of the circuits to examine the issue agree that the phrase 'crime of child abuse, child neglect, or child abandonment'" in § 1227(a)(2)(E)(i) is ambiguous." *Id*. at 998.  Similarly, in *Alvarez-Cerriteno*, 899 F.3d 774, both the majority and the dissenting opinions agreed that the statute was ambiguous.[5] Thus, despite the majority's contrary assumption, our decision to rehear *Martinez-Cedillo* en banc did not undermine the determination that the statute was ambiguous.

Our sister circuits uniformly agree that the statue is ambiguous.  The Fifth Circuit in *Garcia v. Barr*, 969 F.3d 129, 133 (5th Cir. 2020), opined that "Congress left the term 'crime of child abuse' undefined, and the legislative history doesn't plainly express its meaning," that there is not "any widely accepted definition of that term," and that "the statute doesn't speak unambiguously to the question at issue." *Id*. The Third Circuit in *Mondragon-Gonzalez v. Attorney General*, 884 F.3d 155, 158–59 (3d Cir. 2018), held that "[t]he crime of child abuse is not defined in the INA. Moreover, the meaning of the phrase, 'crime of child abuse,' as used in § 1227(a)(2)(E)(i) is not plain and unambiguous." The Eleventh Circuit in *Pierre v. U.S. Attorney General*, 879 F.3d 1241, 1249 (11th Cir. 2018), stated that "[t]he INA does not define 'child abuse'" and thus, "[b]ecause the statute is silent on the issue, we may defer to the BIA's interpretation of the INA, so long as that interpretation is

---

[5] *Menendez*, 908 F.3d 467, seems to accept that 8 U.S.C. § 1182(a)(2)(A)(i) is ambiguous in concluding that California Penal Code § 288(c)(1) "is broader than the generic definition of a 'crime of child abuse' in two ways." *Id*. at 474.

reasonable and consistent with the statute." The Second Circuit in *Florez v. Holder*, 779 F.3d 207, 211 (2d Cir. 2015), had "little trouble concluding that the statutory provision is ambiguous." It noted that "the statute does not define the term 'crime of child abuse,'" "state and federal statutes, both civil and criminal, offer varied definitions of child abuse, and the related concepts of child neglect, abandonment, endangerment and so on," and "it is difficult to know precisely which sort of convictions Congress had in mind when it used the phrase 'a crime of child abuse.'" *Id*.

Even the Tenth Circuit in *Ibarra v. Holder*, 736 F.3d 903 (10th Cir. 2013), the only case that agrees with the majority's bottom line, implicitly recognized the statute's ambiguity. *Id*. at 910 ("We apply *Chevron* deference to precedential BIA interpretations of ambiguous federal immigration statutes so long as the Board's interpretation does not contravene Congressional intent.").

To the extent that the majority asserts that § 1227(a)(2)(E)(i) is unambiguous, the conclusion is contrary to our prior opinions and creates a split with all of our sister circuits that have considered the issue.

## IV

Nor is the majority opinion persuasive when viewed through *Chevron*'s second prong. It ignores the reasoning in the majority opinion in *Martinez-Cedillo*, as well as the reasoning of our sister circuits, and seeks to limit the agency's discretion to the majority's reading of dictionary definitions and its supposition of what Congress might have thought. Furthermore, the majority's approach is violative of our limited review of an agency decision.

In *Chevron*, 467 U.S. at 843–44, the Supreme Court held that where "Congress has not directly addressed the precise question at issue," then the agency's regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." The Court commented that where "a reasonable accommodation of conflicting policies . . . [are] committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Id*. at 845 (quoting *United States v. Shimer*, 367 U.S. 374, 382–83 (1961)). We have adhered to this standard. In *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1087 (9th Cir. 2013) (en banc), we held that "the BIA's construction of ambiguous statutory terms in the INA . . . is entitled to deference under *Chevron*" and "[i]f the BIA's construction is reasonable, we must accept that construction under *Chevron*, even if we believe the agency's reading is not the best statutory interpretation."

Although the opinion was vacated, Judge Bybee's reasoning in *Martinez-Cedillo* offers substantial guidance. His majority opinion moved quickly to *Chevron* step two because "[t]here are no federal crimes of child abuse, neglect, or abandonment to provide analogous definitions, and unlike certain common-law crimes like burglary or assault, there are no widely accepted definitions of child abuse, neglect, or abandonment." 896 F.3d at 987. The majority agreed with the Second Circuit's opinion in *Florez v. Holde*r, 779 F.3d 207 (2d Cir. 2015), reasoning:

> Similar to the instant case, Nilfor Yosel Florez had been convicted of child endangerment under New York law for driving under the influence with children in

his car and had been ordered removed under § 1227(a)(2)(E)(i). *Id.* at 208. The Second Circuit reasoned that, as of 1996 when Congress passed IIRIRA, "at least nine states had crimes called 'child abuse' (or something similar) for which injury was not a required element." *Id.* at 212. Although "even more states used a definition that did require injury," courts must not "look [ ] for the best interpretation, or the majority interpretation—only a reasonable one." *Id.* The Second Circuit concluded that the BIA acted reasonably in adopting a definition of child abuse "consistent with the definitions used by the legislatures of Colorado, Kentucky, Nebraska, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, and Virginia." *Id.* Moreover, Black's Law Dictionary offered a definition of "child abuse" that did not require injury. *Id.*

896 F.3d at 987–88.

The majority found the Tenth Circuit's contrary conclusion flawed. First, it commented that "there is no inherent problem in the BIA relying partly on civil statutes to understand the phrase 'a crime of child abuse, child neglect, or child abandonment,'" in part because "the BIA used civil definitions to inform its understanding of which convictions are crimes of child abuse, neglect, or abandonment, and that is not unreasonable." *Id.* at 988–89. "Second, there is no requirement that the BIA interpret a generic offense in the INA to conform to how the majority of states might have interpreted that term at the time of amendment. That is one reasonable aid to interpreting

statutes, but it is not the only reasonable method for doing so." *Id*. at 989. Third, the majority found that the Tenth Circuit's fifty-state survey was problematic and misconstrued some state laws.[6] *Id.* at 991.

Most recently the Fifth Circuit, in *Garcia v. Barr*, 969 F.3d 129 (5th Cir. 2020), considered and deferred to the BIA's interpretation of "crime of child abuse." It first agreed with its sister circuits that the statute was ambiguous. *Id*. at 133. The Fifth Circuit declined to follow *Ibarra*, 736 F.3d 903, noting that the "Tenth Circuit's reading of a 'crime of child abuse' may be reasonable; it might even be more reasonable than the Board's. But the question isn't whether the Board's interpretation is the best—only whether it is reasonable." *Id.* at 134. The Fifth Circuit also rejected the petitioner's argument that the Board should reconsider its definition of "crime of child abuse" in light of *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562. It reasoned:

> *Esquivel-Quintana* has no application here. The Court's narrow holding didn't relate to the child-abuse provision in § 1227(a)(2)(E)(i), mandate a particular approach to statutory interpretation, or cast doubt on the Board's definition of a crime of child abuse. *See Matthews v. Barr*, 927 F.3d 606, 614–16 (2d Cir. 2019). And because the statutory text there was unambiguous—

---

[6] For example, the majority thought that the Tenth Circuit had misunderstood the mens rea required by California Penal Code § 273a. *Martinez-Cedillo*, 896 F.3d at 991.

unlike the child-abuse provision here—that case doesn't affect our *Chevron* analysis.

969 F.3d at 134.

Similarly, in *Mondragon-Gonzalez*, 884 F.3d 155, the Third Circuit found that the BIA's interpretation of "crime of child abuse" was reasonable. It noted that the BIA had explained that the statue "was enacted . . . as part of an aggressive legislative movement to expand the criminal grounds of deportability in general and to create a 'comprehensive statutory scheme to cover crimes against children' in particular." *Id*. at 159 (quoting *Velasquez-Herrera*, 24 I. & N. Dec. at 508–09). The court concluded that "[g]iven Congress' evident intent to make crimes that harm children deportable offenses, we do not find the BIA's interpretation in this regard to be 'arbitrary, capricious, or manifestly contrary to the statute.'" *Id*. (quoting *Chen v. Ashcroft*, 381 F.3d 221, 224 (3d Cir. 2004)); *see also Pierre v. U.S. Attorney General*, 879 F.3d 1241, 1249–50 (11th Cir. 2018).

The Second Circuit in *Florez v. Holder*, 779 F.3d 207, also found the BIA's definition of "crime of child abuse" to be a permissible construction of the statute. *Id*. at 211. The court commented that the definition—broad as it is—is at least grounded in reason. "When Congress amended the INA in 1996 to make child abuse a removable offense, at least nine states had crimes called "child abuse" (or something similar) for which injury was not a required element." *Id*. at 312.

Of course, as *Martinez-Cedillo* has been vacated, it is not binding on us, nor are our sister circuits' opinions, but the majority's failure to address the reasoning in these cases undermines its analysis. The majority does not consider the

legislative history of § 1227(a)(2)(E)(i), or Congress' intent in enacting the statute, or whether there are multiple reasonable interpretations of "crime of child abuse." Instead, citing *Esquivel-Quintana*, 137 S. Ct. 1562 (2017), it seeks to find a single compelling definition of the generic federal offense. Maj. at 11–12. But this is leading with the wrong foot. Under *Chevron* we are not tasked with defining the elements of the generic federal offense but in determining whether the agency's definition of the generic federal offense is reasonable.

The majority proceeds down the wrong path in arguing that *Esquivel-Quintana*, which it admits "has no direct bearing on the issue before us," is highly instructive. Maj. at 14. It reasons that in *Esquivel-Quintana* when the Court observed that Congress had not defined the critical term, the Court "did not throw up its hands and declare the statute ambiguous," but instead "relied on 'the normal tools of statutory interpretation' to determine whether the statue provided a clear answer." Maj. at 14 (quoting *Esquivel-Quintana*, 137 S. Ct. at 1569). It then concludes that "three of the four sources of statutory meaning the Court consulted in *Esquivel-Quintana*—contemporary legal dictionaries, statutory structure, and contemporary state criminal codes— support the conclusion that § 1277(a)(2)(E)(i) unambiguously forecloses the BIA's interpretation of the statue in *Soram*."[7] Maj. at 15.

---

[7] It may be reasonable to use "the normal tools of statutory interpretation" under step one to determine the parameters of Congress' delegation to the agency, but these tools are less compelling when employed to determine whether the agency's interpretation of an ambiguous statute is permissible or reasonable.

In addition to being the wrong question based on an inapplicable case (as the Fifth Circuit noted in *Garcia*, 969 F.3d at 134), the majority's analyses of legal dictionaries, statutory structure, and state criminal codes is less than persuasive.

The majority purports to hunt for the "common meaning in 1996" of "child abuse," "child neglect," and "child abandonment." Maj. at 15–17. But this presumes that the BIA's definition of crime of child abuse is limited to a "common meaning." Among the dictionary definitions the majority cites for "child neglect" (perhaps the most relevant of the three terms) is "[t]he failure of a person responsible for a minor to care for the minor's emotional or physical needs." Maj. at 16. The majority then concludes that such a definition "excludes child endangerment offenses . . . that punish one-time negligent acts or omissions exposing a child to the risk of harm." Maj. at 16–17. But this conclusion is hardly compelled. Why isn't it "child neglect" to with at least "criminal negligence," subject a child to the risk of serious physical or emotional harm? After all, Diaz-Rodriquez's conviction of felony child endangerment required a finding of criminal willfulness. *See* CPC § 273a(a).

The majority's section on "statutory structure" is likewise less than compelling. The majority suggests that Congress omitted "child endangerment from the list of crimes specified in § 1227(a)(2)(E)(i)" because "Congress *could have viewed* this less-serious form of misconduct ["negligent child endangerment" rather that child neglect] as an unacceptable basis under the immigration laws for separating parents from their children." Maj. at 17–18 (emphasis added). While this may be a noble sentiment, reasonable minds may differ as to whether any child should

be left with a criminally negligent parent and there is certainly nothing to suggest that what "Congress could have viewed" was what Congress did view or was compelled to view. In other words, the majority's approach to "statutory structure" is, at best, one reasonable perspective that does not foreclose the existence of other reasonable perspectives.

The majority's discussion of state criminal codes also does not support its assertion of a single compelling interpretation of the statute. The majority, having done its own research, states that in 1996 "only a handful of States criminalized conduct that would constitute child endangerment under states proscribing 'abuse,' 'neglect' or 'abandonment;'" "only 14 States criminalized child endangerment committed with a mens rea of criminal negligence," and "36 States did not criminalize such conduct." Maj. at 19–20. According to the majority, this "general consensus . . . unambiguously forecloses the BIA's interpretation of the statute in *Soram*." Maj. at 20. This is so, the majority reasons, because in *Esquivel-Quintana,* "the Supreme Court held that the consensus view of 31 States and the District of Columbia supported the conclusion that Congress unambiguously foreclosed the BIA's attempt to define the generic offense of sexual abuse of a minor to include an age of consent of 18." Maj. at 20–21.

This line of reasoning is far from compelling. As noted, our task is not to determine the best interpretation of "crime of child abuse," but whether the BIA's interpretation is reasonable. Indeed, the majority's own research disclosed that in 1996 "14 States criminalized child endangerment committed with a mens rea of criminal negligence." Maj. at 19–20. The majority does not explain why these states' definitions are unreasonable or why the BIA's interpretation of child abuse must conform to that of the majority of the

states in 1996. The majority has strayed far from our task of determining whether the agency's position is reasonable, "even if we believe the agency's reading is not the best statutory interpretation." *Henriquez-Rivas*, 707 F.3d at 1087.

Basically, the ultimate question is whether the BIA could reasonably interpret "crime of child abuse, child neglect, or child abandonment" to encompass a child endangerment offense committed with a mens rea of at least criminal negligence. The majority does not appear to be arguing that the statute did not require a sufficient mens rea and high risk of harm to the child, as were the issues in *Alverez-Cerriteno*[8] and *Menendez*, but that the statute cannot be construed to include "negligent child endangerment." Maj. at 21. This conclusion is not sound: it strays from our limited task of reviewing the reasonableness of the BIA's determination and is contrary to the opinions of most of our sister circuits. The BIA's determination in *Soram* that the crime of child abuse encompassed the crime of child endangerment committed with a mens rea of criminal negligence was the product of over a decade of efforts by the agency and the courts to interpret the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See Martinez-Cedillo*, 896 F.3d at 982–87; *Garcia*, 969 F.3d at 132–133.

---

[8] Diaz was convicted under CPC § 273a(a) which covers "[a]ny person who, under circumstances *likely to produce great bodily harm or death*." (Emphasis added). The panel in *Alvarez-Cerriteno*, in holding that the Nevada statute there at issue did "not require a sufficiently high risk of harm to a child to meet the definition of child abuse, neglect, or abandonment," 899 F.3d at 783, misinterpreted the BIA's decision in *Matter of Mendoza Osorio* as referring to § 273a(a). In fact, *Mendoza Osorio* concerned CPC § 273a(b) which applies to "[a]ny person who, under circumstance or conditions *other than those likely to produce great bodily harm or death*." (Emphasis added).

In *Martinez-Cedillo* we held that the BIA's determination was a reasonable interpretation of an ambiguous statute, we reiterated that position in *Alvarez-Cerriteno*, 899 F.3d at 781, and *Menendez*, 908 F.3d at 474, and we referred to the deference noted in *Alvarez-Cerriteno* in *Cortes-Maldonado*, 978 F.3d. at 648. Although our opinion in *Martinez-Cedillo* was withdrawn, *Alvarez-Cerriteno* and *Menendez* remain extant. The majority's determination that it can ignore these opinions as precedent is unprecedented, contrary to Ninth Circuit case law on precedent, contrary to the principle of stare decisis, and impractical. I would hold that as a three-judge panel we are bound by the holdings in *Alvarez-Cerriteno* and *Menendez* that the BIA reasonably concluded that § 1227(a)(2)(E)(i) encompasses child endangerment. Accordingly, I dissent.

But even if we were not bound by our prior opinions, I would still dissent because I agree with our sister circuits that the statute is ambiguous, and that the BIA's interpretation of the statute is reasonable. In concluding otherwise, the majority confuses the first and second prongs of *Chevron* and seeks to impose its definitive interpretation of the statute on us and the agency. I cannot agree. The majority presumes that the definition of crime of child abuse is limited to *the common meaning* in 1996 of child abuse, child neglect, and child abandonment. But its own research reveals that in 1996 the states had different criminal codes and that 14 states criminalized child endangerment committed with a mens rea of criminal negligence. The majority's review of selected dictionary definitions cannot obscure the fact that in 1996, indeed even today, there is no singular definition of "crime of child abuse." I agree with the Second, Third, Fifth, and Eleventh Circuits that the BIA's interpretation of 8 U.S.C. § 1227(a)(2)(E)(i) as encompassing the crime of child endangerment committed with the mens rea of criminal

negligence is a reasonable interpretation of an ambiguous statute.  For this reason, as well, I respectfully dissent.